And may it please the court, my name is Jim Stanton and I'm here to represent Keith Anstine. And I'd like to start by saying that I've heard many times over the time I was in the Air Force or any other place that said no good deed goes unpunished. And I'd like to say that is very applicable to Mr. Anstine's case. Everything was going good in his career and then he gets demoted because he didn't follow the weight program. That's very good as far as all of these good things. Keith Rader had said, my go-to guy, this is on the experts on Russian missiles at headquarters STRATCOM, which is our highest military facility for all of our branches of service in Omaha, Nebraska. And this is a tech sergeant doing this outstanding work and then he falls into not meeting the weight standards and a demonium. So why did the Air Force do wrong here? I understand that there's an issue first about voluntariness. Right, I want to get into that. Let's put that aside, but let's assume that this was involuntary and that it can challenge it. Why is it that the Air Force did wrong? They didn't follow the regulations. And how was that? Primarily, and the one, which I won't get into, but it's in the brief, that when the commander goes to state actions under these circumstances for weight, because it's not a criminal matter or anything else, you have to consider his entire military career. There's nothing in the record to indicate that commander ever did that. Indeed, when the first JAG opinion came out on the advisory opinion for the Board of Correctional Military Records, they found exactly what we had done. They said, yes, okay, but that's before the board made a decision. They said, yes, he wasn't properly medically evaluated. He wasn't medically prepared to go into this program. But they never, that JAG never went into discussing whether the commander actually fulfills his responsibility. I'm checking his entire military record. That's a motion that you say that the regulations require his entire record to be. Yes, yes, your honor. Are you also contending that he shouldn't have been put into this weight program because his weight problem resulted from a medical issue? Yes, your honor. As it turned out that way. Now, at the time, the commander didn't even really know what his medical condition was. And that only came out later when the medical advisory consultant for the board went back and checked all his records and said, oh, yeah, he was okay. So what should they have done, take him out of the weight program? Well, they should have at least continued him in that and maybe on a probationary status and then said, well, we're going to have him checked out, okay, and see what he had. Because back in 1997, which was five years before they actually took the demotion, actually in 2002, they had a flag come up that when he was going through a medical exam, he was going to go in to try to be an officer. He had a medical exam to come up and find out why he had some problems with his thyroid and everything else. That was never followed up sufficiently, although apparently what they did do must have been sufficient. But the records didn't really show that at the time of the demotion, at least for the commander to know. Now, what happened was he was demoted. But the issue of this case isn't about whether it was properly demoted, is it? Primarily. The big issue in this is whether he was involuntarily separated or whether he voluntarily separated. I'd like to judge that. Didn't he sign the paper and say, I'll take it and go? No, Your Honor, I'll tell you, he signed it, but that signing is not determinative in this matter. That's just a perfunctory administrative action because when a person comes up on this, the big issue out here is, but isn't our case law pretty clear that even if you take a less attractive opportunity, the fact that you took it is voluntary? Yes, Your Honor, and I'd like to discuss that. He didn't like what he had to do. I don't think he should have done that. He hired the tech sergeant rather than the staff sergeant, but he took the staff sergeant and left. He had to do that, Your Honor. The question is, under the cases, is whether improper action led him to do this. And so in order to have a claim here, you've got to have a claim that the Air Force acted improperly, which is what caused his resignation. And the fact that he chose to resign rather than be fired doesn't prevent him from being involuntary, as long as it was the result of improper action. My question then is what the improper action was. In fact, the improper action was that while he didn't check his entire military records to see what an outstanding person he was, which was in his EPRs, as well as the statement by one of his former supervisors, Master Sergeant Powell, who gave the statement after he retired to say that he tried and tried, but his immediate commander said, don't demote him. We'll work with him. He's a great troop. And he continued to work even after he was demoted. But he didn't even want to look at that. He was looking at the fact, oh, he missed his weight thing. Then he was demoted. And then there was a mistake in the fact that the demotion authority said, I'll consider it if he gets well within six months. But the regulation says if you're going to restore his grades, you have to do it between three and six months. Well, but this was the fourth time. He had four years. And when he was on hormones, he continued to gain weight. The hormones would solve the problem, the thyroid problem. Well, they found that out after he was demoted and after he went back in 2003 to the medical people to say, what was my real status? Then they determined, well, it looks like you're going to need surgery. He requested another opinion. He went off base to a retired military physician who lived there. We have looked at this. The question is, and I agree with Judge Dyke, that I'm still struggling to find anything they did that was prejudicial towards him. It seems like they gave him year after year after year to try and make it. They really were. He was doing it as long as he could go and do his exercise and work out of the gym. Now we have 9-11 come in. It's September of 2001. That's when this whole problem. He had been deployed to Turkey. He came back, and then he was working. And in his own statement, he indicates he worked 10 to 12 hours or more a day, then switched it to night, couldn't get to the gym. But I think that's the problem. This is all, I understand what the arguments you're making, but there's a certain amount of discretion and judgment that has to be exercised here by the Air Force. In order to prevail, you need to show that they did something that was contrary to regulations. And I'm having difficulty seeing what they did that was wrong. Now, I understand that you say, well, they should have given more weight to his efforts to keep down his weight and, you know, ensure that he can work considerations with medical conditions. They considered all those things. This is the judgment that you think is wrong about that. But that's not, that doesn't show impropriety by the Air Force. Well, I think the trial judge herself even said that when the second judge advocate's opinion came out for the Board of Correctional Military Records, when they said, oh, yeah, now the rheumatologist who makes this decision without seeing the person says that he was medically fit to be on the program, that judge advocate and the judge says in her opinion that he never went back and looked again at our allegations, that they didn't follow the regulation in looking at his entire record, and they didn't follow regulations as far as restoring his grades. But he sought an extension due to medical conditions. Your Honor, to me, that would have been totally wasted. That's thrown out there. Here we have three options. His options, as they indicate, and the judge says in the top of page 38 of her decision, which is in page 39 in the appendix, said that he had three options. The option was that he could separate or he could ask for an extension of the high year tenure or he could retire. Now, separation means at the end of the 20 years, because of the high year tenure, you're out as a staff sergeant. For tech sergeants, he could have waited until 24 years. Now he's out as a tech sergeant. He's coming up on his 20 years, and for some reason he basically asks, how do you want to go out? Now, if he says, what do you mean? Well, at the end of the 20 years, if you don't request retirement, you will get a piece of paper that says you're out and you get nothing. You're absolutely right. If the Air Force is absolutely improper, and that caused him to be only a tech sergeant, and he had to retire at that point, the fact that he chose to retire rather than ask to be fired, doesn't make it voluntary rather than voluntary. But you've still got to show that there was something improper that the Air Force did that led to the promotion, that led to this situation where he had to leave the Air Force. Well, John, that's true. But it's also, I think it's important to note that even after he was demoted, the Air Force made efforts after he brought it to their attention and had been seen by an endocrinologist off-base, as well as the younger doctor, that his thyroid glands could and did affect it. Then he got with the command surgeon for Stratcom, who first was reluctant to do anything and said, oh, no, it doesn't matter. Then he looked into this and started treating him with his new synthoids, and then he started to comply. I mean, he started being able to lose weight. That's in the record. So that in the latter part of 2003, they convinced the commander, not the immediate commander but the main commander, General Shelton, to go ahead and ask the Air Force, go ahead and restore his grade. And it went all the way to headquarters Air Force, and they turned it down not really because, hey, it wasn't justified, but they're saying, oh, you're too late. The regulation says you have to do it between two and six months, and you're here 18 months. Here's a piece of paper. This is what the Board of Corrections and Military Records, which we later did. And we almost won there. Do you want to save some of your rebuttal time? Yes, sir, I have five minutes. I didn't tell you. Okay. Okay. We approve the court. This case is about Sergeant Anstine's request to have this court revisit a discretionary determination. I have a lot of trouble with the government's position here, which just seems to me directly contrary to lots of our cases. The mere fact that he chose to retire when he was demoted isn't the end of the inquiry. If that retirement was the result of improper action by the Air Force, then his retirement was involuntary, correct? Yes, Your Honor. But the brief doesn't sound that way sometimes. It says, oh, well, he chose to retire rather than be fired, so that's the end of the matter. You've also got to say he retired unrelated to any improper action by the Air Force, right? Yes, Your Honor. And that is the case here. The one argument or the one alleged procedural violation is that Sergeant Anstine is that the Air Force didn't look at his entire record in the demotion. However, in the record here, in the joint appendix, in pages 183 to 188, there's correspondence between the LNA commander and Sergeant Anstine. As the courtroom noted on 183, the case file is attached. And then at 185, Sergeant Anstine responds to the proposed demotion, which was in May of 2002, and in it he points out parts of his record that he wished to be considered after the proposed demotion action. And in response, he gets the July 14, 2002 notice that the promotion will proceed, but it was then he appealed it. And he did all these steps after consulting with counsel. And so in terms of this argument that the whole record wasn't considered, appellant doesn't really point out what specifically was violated, what was not considered. In fact, the record points to the fact that all of these facts were brought to the LNA commander's attention and the decision was still made because of Sergeant Anstine's failures in the weight and body fat management program that a demotion should take place. Now, the Air Force instruction governing administrative demotions is 36-2503. And in that, it says, if the commander has sufficient reason to initiate demotion action, he can use the entire military record in deciding whether demotion is appropriate. That regulation or instruction also says airmen may be demoted when after entry into the weight management program they cannot maintain body fat standards as outlined in Air Force instruction 40-502. Now, in the appendix on page 211 and 212, we've attached the instruction, which states that airmen may be demoted after their third failure in the weight and body fat management program. Now, the record reflects that there were at least four failures by Sergeant Anstine before his commander even initiated the demotion action. And specifically, there was a letter of admonishment in August 2001. There was a documented failure in November 2001 that was later forgiven, but there was a letter of reprimand which references failures in February 2002. And on 176, there's a fourth failure, which is in March 2002. So this is not a case where he merely failed one time and then the decision was made. What about the medical conditions? If I look all correctly, maybe I'm wrong about this. I thought the corrections board divided over that, that there was one member of the board thought that the medical situation here should have exempted him from the weight limit. Is my recollection correct about that? Yes, Your Honor. It was a split vote, two to one. However, the minority voting member did not furnish an opinion. So it's really unclear what the exact thesis for the decision to vote against, to vote against the majority, which said that no relief should be granted in this case. However, it also deserves note, and it is written in the trial court's opinion on page, joint appendage page 26, that even the endocrinologist who first stated that there may be a connection between the thyroid condition and the weight gain, wrote that Sergeant Einstein's weight gain between 2004 and 2006 counsels against a finding that the thyroid condition was related. We don't have a trial on this issue of whether his medical condition should excuse the weight gain. I mean, there seems to be somewhat conflicting evidence about it. The real question, it seems to me, is whether it's any of our business or any of the business of the court of federal claims to second-guess the military's determination that the medical excuse wasn't sufficient. Is that something that can be raised in the court of federal claims to second-guess the motion? That's the key issue, it seems to me. Right. I mean, that would be something, if there were a procedural error, that the court of federal claims could only send back to the board, because these are motions for judgment on the administrative record, and it's basically motions, it's just on paper. That's something that would be found in the first instance by the board. And here, the board did make a determination, although it was by a split decision, but the board did make a determination that Sergeant Einstein was properly placed in the weight and body fat management program. And so it's not something that the court of federal claims could take new evidence on or second-guess. Here, multiple opinions were sought in order to determine what was the proper course, and it was something that was considered not only by the board initially, but they also issued a short opinion and listed it again on reconsideration. So there, there is a justiciability issue, because what testing standards could the court of federal claims apply to decide, basically on the record, that he should not have been put in the program when there is conflicting medical evidence? And the board, at some point, had to make a determination, which course they thought was more appropriate, and they decided that in this case, that the placement on the weight and body fat management program was proper. And so, going back to the voluntariness issue, it's also important to note, while we agree with the court in the concern that just checking the box that says voluntary, even if it was a result of coercion, would not make involuntary retirement voluntary. At the time that Sergeant Einstein requested retirement, which is in December 2003, and that's at Joint Appendix 203, he was not facing imminent separation. In fact, I don't understand. If the Air Force acted improperly in demoting him to the technical sergeant, and that brought him to the end of the period, and he chose to voluntarily retire, that seems to me still involuntary. Don't you agree with that? Yes, well, yes, it would still be involuntary. And there's a second problem, though, in terms of dismissal, which is just that Sergeant Einstein is an enlisted soldier, and his contract for enlistment expired on September 30th, 2004, which means that he had no continuing right under Dodson to receive pay. And although— I mean, Your Honor, we just don't know. It's very—it's possible he couldn't. Perhaps if there is determination that he was failing to meet the program, then they could have denied his re-enlistment. I mean, I guess it's just speculation at this point whether he could have, but he had no special right to re-enlist. And even in Dodson, where the soldier met, where this court found that there was error and found that he may be entitled to almost all the relief he seeks, the court still made clear that he would only be entitled to the relief through the end of his enlistment period. And the same holds here. Even if there were an error, Sergeant Einstein could not possibly recover after the term of enlistment because there is no continuing right to pay in that case. And for these reasons, we respectfully request that you affirm the Court of Federal Claims' dismissal of Sergeant Einstein's case. All right. Thank you. Mr. Schneider. Yes. The primary thing that I really want to impress upon the Court is that you indicated that you feel that even though he was demoted, that there should not be a voluntary retirement. That's our main thing, but that's not what the judge below said. She's basically saying she can't reach that point because of the SAMP case, which we assert has nothing to do with this because the SAMP facts indicate that he clearly asked to voluntarily leave the service. But this is more like the Conoco case, where although this is a decision from the Court of Federal Claims, but it's right on target because in that case, they said that Conoco, he retired in the precise way the mandatory provisions of the high year tenure required. He did not retire pursuant to any other statute to avoid the discharge, which is what Moyer did. Moyer requested discharges so that he wouldn't have to be charged by court-martial. So that gets out there. The Conoco case really should be made the law of this Court, and that would be, and the judge stressed it so much in that case that he said to say that plain selection of one of the three options under the mandatory high year tenure regulations made his retirement voluntary, which is what the judge ended up having to do, would be a corruption of language. We don't need the law to be a corruption of language. We need it to be very fair, logical. So I'm asking you to adopt the criteria under Conoco and say yes. He didn't have a viable choice when it came up here. He either could say, okay, yes, I'll suffer more because of our financial conditions and just be separated. He was entitled to get retirement pay at 20 years. He chose it because that was the lesser of the evils, because he still could have the means of, even though he was up to terrible financial straits, mainly because, and again, the thing I want to point out is for the immediate commander, what he failed to do was he did not get back with the demotion authority after the demotion to follow up how well he was doing on his test afterward. For August, September, and October of 2003 or 2002, he said he was satisfactory. He met the criteria. And as the one advisory opinion indicated, his commander could have at that time recommended that he have his rank restored. He met it. But instead, that commander was holding off because somebody said you have to wait until six months, which was a mistake. You're supposed to do it for three to six months. And then at one percentage point, it wasn't his weight, it was his body fat, he measured 25 percent instead of 24 percent. And his commander then said, oh, I got you. That's basically what he did. He said, okay, you're going to stay with me as a staff sergeant. Even though after that, staff time through the command sergeant and the two other civilian physicians who said, yes, his thyroid did or could affect it, and the command sergeant put him on steroids or the SysEx, and he did lose weight and they were convinced he should have his rank restored and went all the way to the Air Force. And they said, sorry, you're too late. And so the board of correctional military records, which we did, sent back one again. We didn't make it. We got one, but we needed two. And what I'm asking is, please, two or three of you go ahead and change the rule and say he did not retire voluntarily. That was just a perfunctory action by some administrative person that the forum said voluntary retirement. He just wanted to get his retirement paid. We changed that rule, sent it back to the trial judge, and now face the other issues which are indicated, as we indicated before, that the government or the Air Force did not follow the regulations in the manner in which they demoted him, which was to consider the entire matter, because she did not address that because she said, no, I can't get past the point of saying that it was involuntary. Even though, as we indicated in that wording, even though that the terminology was Mr. Stanton, your time is up. That would cause a hardship. We don't need that. It should have been very easy. Thank you very much. Thank you, Mr. Stanton. Our final case today is the Omega Group versus Life Technologies. Thank you. Thank you. Mr. Troopas. Good morning. This is the court. I'm Jim Troopas, and I represent Omega Corporation with my co-counsel, Susan Podolsky.